## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:15-CV-22657-UNGARO

ANDRES GOMEZ, on his own behalf, and on
behalf of all other individuals similarly situated,

        Plaintiff,

v.

PEI WEI ASIAN DINER, LLC, d/b/a Pei Wei
Asian Diner,

        Defendant.

_____/

### MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM AND MEMORANDUM IN SUPPORT

Defendant Pei Wei Asian Diner, LLC ("Pei Wei") respectfully moves to dismiss this case with prejudice for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), and/or for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff Andres Gomez ("Plaintiff"), who is legally blind, alleges he visited a Pei Wei Asian Diner restaurant in Miami, Florida, and, during this single visit, was unable to use a Coca-Cola Freestyle beverage dispenser independently.  On the basis of this visit, he attempts to assert claims on behalf of himself and a purported nationwide class of similarly-situated individuals under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, and the Florida Civil Rights Act ("FCRA"), Fla. Stat. §§ 760.01-760.11, 509.092.  The Complaint should be dismissed for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), as Plaintiff lacks standing because (1) he did not suffer any injury-in-fact; and (2) he cannot establish a genuine threat of imminent future injury.  In addition, the Complaint should be dismissed for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), because (1) Plaintiff

does not claim that he was unable to use the Freestyle dispenser because of an absence of auxiliary aids or services, but rather only that he was not able to *independently* use the Freestyle dispenser and was not given the auxiliary aid of his choice; and (2) Plaintiff never placed Pei Wei on notice of his need for any auxiliary aids or services because of his disability.

## I.     STATEMENT OF THE FACTS

A.     <u>Relevant Factual Allegations in the Amended Complaint</u>.

Plaintiff's claims and allegations in this matter focus on the Freestyle beverage dispenser at a Pei Wei restaurant in Miami.  (Am. Cmplt. at ¶ 32)  The Freestyle dispenser is a self-service beverage fountain that provides consumers with the ability to browse, select, and mix beverage recipes from an array of Coca-Cola products.  (*Id.* at ¶¶ 18, 34 n.3)  According to the Amended Complaint, the Freestyle dispenser uses an exclusively visual interface and does not utilize tactile controls or screen reading software.  (*Id.* at ¶¶ 19, 43-44)  Plaintiff suggests that Pei Wei should be required to implement the same technology that is used in blind-accessible ATMs in the Freestyle dispensers used in its stores.  (*Id.* at ¶¶ 43, 85)

Plaintiff, who is legally blind, claims that on May 24, 2015, he purchased a beverage at the Pei Wei restaurant located at 2283 SW 37th Avenue, Miami, Florida, which has a Freestyle dispenser.  (Am. Cmplt. at ¶¶ 32-33)  He alleges that he was not able to operate the Freestyle to dispense his own beverage.  (*Id.* at ¶ 34)  He further claims that he "asked Defendants' staff if the Freestyle Machine was the only way to obtain soda," though he does not state what answer he received.  (*Id.* at 36)  He alleges that the staff of the restaurant "was unable [to] provide instruction, or a substitute method, nor any device or tool which [he] could employ in order to independently use the Freestyle to select, mix and dispense his soda fountain drink."  (*Id.*)

B.      Notable Omissions from the Complaint.

The Amended Complaint is most notable for what it does *not* say.  Plaintiff does not allege that he was unable to obtain a beverage during any visit to a Pei Wei location – rather, he only alleges that he was not able to obtain his beverage without assistance.  (Am. Cmplt. at ¶¶ 34-37)  Nor does he allege that he notified any Pei Wei employee that he is visually impaired, or that he was not able to use the Freestyle dispenser *because of his visual impairment*.  Moreover, he does not claim that he requested assistance with the Freestyle from any Pei Wei employees *because of his visual impairment* – instead, he alleges only that he asked if the Freestyle dispenser was the only way to obtain a drink.  (*Id.* at ¶ 36).  Similarly, he does not allege that he was ever denied such assistance, claiming only that "[t]he staff was unable [to] provide instruction…or a substitute method" he could use to operate the Freestyle dispenser *independently*.  (*Id.*)  Notably, he does not actually allege that he ever requested any such instruction, and his allegation in this regard focuses only on an alleged failure to provide unrequested instructions or substitute methods to enable him to obtain a beverage *independently*.  (*Id.*)  He also does not claim that he requested or was denied any other auxiliary aids or services in connection with the Freestyle dispenser.

C.      Additional Facts Demonstrating Plaintiff's Lack of Standing.

The Pei Wei restaurant that Plaintiff allegedly visited places a particular emphasis on ensuring that customers with disabilities enjoy their experience at Pei Wei.  (Lupella Decl. at ¶ 7)[1]  All employees of the restaurant are trained to provide exceptional service, including assisting guests, both disabled and non-disabled, with carrying food, obtaining drinks, including from the Freestyle dispenser, and getting condiments.  (*Id.* at ¶ 11)  In addition, the restaurant is well-

---

[1]      The Declaration of Jordan Lupella is attached as Exhibit A.

staffed with many employees who would have been available to assist Plaintiff had he requested any assistance with the Freestyle dispensers. (*Id.* at ¶ 8) This includes a dedicated employee whose job is to circulate in the dining area to deliver food orders, clean up, and assist guests. (*Id.*) In order to deliver food to seated customers, this employee constantly walks directly past the Freestyle dispensers and is thus available to assist customers with the dispensers. (*Id.* at ¶ 9) In addition, the numerous employees typically staffed at the register and in the open kitchen area work within sight of the Freestyle dispensers and are easily accessible to any customer who have questions or need assistance. (*Id.* at ¶¶ 8-10) As a result of all of this, the employees of the restaurant in question are available and ready to respond to any guest request, including assisting disabled customers in using the Freestyle dispensers. (*Id.* at ¶ 11)

In an abundance of caution in response to the allegations in this lawsuit and to reinforce Pei Wei's principles of exceptional customer service for all customers, including customers with disabilities, on August 14, 2015, the store manager of the restaurant in question re-communicated to all of his customer-facing employees the restaurant's practice of ensuring that any disabled customer who needs assistance is provided such assistance in a timely and professional manner. (Lupella Decl. at ¶ 12) As a part of this effort, he specifically addressed the need to ensure that any visually-impaired person is offered assistance in getting a drink from the Freestyle dispensers. (*Id.*)

## II.    ARGUMENT AND CITATION OF AUTHORITY

A.    <u>Plaintiff's Claims are Governed by Title III's Auxiliary Aids and Services Requirement</u>.

Title III provides generally that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

This general prohibition is implemented through a number of specific provisions located in 42 U.S.C. § 12182(b)(2), one of which defines "discrimination" to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services…."  42 U.S.C. § 12182(b)(2)(A)(iii).

Because Plaintiff's claim is based on a communication-related disability, it is analyzed under the "auxiliary aids and services" provision of Title III.  *See Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (analyzing visually impaired plaintiff's Title III claim relating to menus in a restaurant under auxiliary aids and services requirement); *Martin v. Halifax Healthcare Sys.*, No. 14-12771, 2015 U.S. App. LEXIS 13383, at *17-19 (11th Cir. July 31, 2015) (focusing on auxiliary aids and services requirement in Title II case alleging failure to provide sign language interpreters for hearing-impaired patients); *Am. Ass'n of People with Disabilities v. Harris*, 647 F.3d 1093, 1107-08 (11th Cir. 2011) (finding county did not violate auxiliary aids and services requirement under Title II by providing third-party assistance to visually impaired voters); *see also* 42 U.S.C. § 12103(1) (defining "auxiliary aids and services" to include "qualified readers, taped texts, or other effective methods of making visually delivered materials available *to individuals with visual impairments*.") (emphasis added); 28 C.F.R. Part 36, Appendix C, analysis for § 36.303 ("The Department interprets auxiliary aids and services as those aids and services designed to provide effective communications, i.e., making aurally and visually delivered information available to persons with hearing, speech, and vision impairments.").

Because Plaintiff's claim is covered by one of the specific requirements of Title III, that specific requirement controls the Court's analysis and evaluation of his claim, and Plaintiff

cannot state a claim based on the general prohibitions in 42 U.S.C. §§ 12182(a) and 12182(b)(1).  *See* 28 C.F.R. § 36.213 ("The specific provisions, including the limitations on those provisions, control over the general provisions in circumstances where both specific and general provisions apply.")[2]; *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 681-82 (2001) (whether there has been a violation of the general rule in § 12182(a) "depends on a proper construction of the term 'discrimination'" as more specifically defined in § 12182(b)(2)); *U.S. v. Nat'l Amusements*, 180 F. Supp. 2d 251, 258-60 (D. Mass. 2001) (relying on § 36.213 and holding that, absent a violation of the specific applicable requirements of subparts C or D of the Title III regulations, plaintiff could not rely on the general prohibitions in subpart B to state a Title III claim).  Though the Amended Complaint makes references to the more general requirements under Title III (*see*, *e.g.*, Am. Cmplt. at ¶¶ 48-49, 81, 87), Plaintiff appears to concede that his claims are actually governed by the auxiliary aids and services requirement.  (*Id.* at ¶¶ 85-86)

B.     The Auxiliary Aids and Services Provision Only Requires Effective Communication, Not a Guarantee of Independence.

Pei Wei's obligation under the auxiliary aids and services provision is to provide effective communication.  28 C.F.R. § 36.303(c)(1) ("A public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities"); 28 C.F.R. Part 36, Appendix C, analysis for § 36.303 ("Implicit in [the] duty to provide auxiliary aids and services is the underlying obligation of a public accommodation to communicate effectively with its customers…who have disabilities affecting hearing, vision, or speech.")

---

[2]     The commentary on the Title III regulations similarly provides: "Resort to the general provisions of subpart B [regarding the general requirements of § 12182(b)(1)] is only appropriate where there are no applicable specific rules of guidance in subparts C [regarding the specific provisions of § 12182(b)(2)] and D."  28 C.F.R. Part 36, Appendix C, analysis for § 36.213.

The requirement to ensure effective communication through auxiliary aids and services is not, however, a requirement that public accommodations ensure that their visitors and customers can operate *independently* with respect to their communication-related disability.  The ADA defines auxiliary aids and services to include, among other things, "qualified readers."  42 U.S.C. § 12103(1).  While a qualified reader for a visually impaired customer could certainly allow for *effective* communication, he or she – by the very nature of the task involved – would not allow for *independent* communication by the disabled individual.  Moreover, ADA's legislative history explains the practical application of the auxiliary aids and services as follows:

> For example, auxiliary aids and services for blind persons include both readers and the provision of brailled documents….  A restaurant would not be required to provide menus in braille if it provided a waiter or other person who was willing to read the menu.  Similarly, a bookstore need not braille its price tags….  Rather, a salesperson can tell the blind person how much an item costs….

101 H. Rpt. 485 (1990).  When DOJ issued the implementing regulations under Title III, it offered a similar explanation of how the requirement should play out in the real world:

> The auxiliary aid requirement is a flexible one.  A public accommodation can choose among various alternatives as long as the result is effective communication.  For example, a restaurant would not be required to provide menus in Braille for patrons who are blind, if the waiters in the restaurant are made available to read the menu. Similarly, a clothing boutique would not be required to have Brailled price tags if sales personnel provide price information orally upon request….

28 C.F.R. Part 36, Appendix C, analysis for § 36.303; *see also Harris*, 647 F.3d at 1107-08 (finding county did not violate auxiliary aids and services requirement under Title II by providing third-party assistance to visually impaired voters); *Petrano v. Nationwide Mut. Fire Ins. Co.*, No. 1:12-cv-86-SPM-GRJ, 2013 U.S. Dist. LEXIS 45609, at *25 (N.D. Fla. Jan. 24, 2013), *adopted sub nom. Petrano v. Old Republic Nat'l Title Ins. Co.*, 2013 U.S. Dist. LEXIS 45611 (N.D. Fla. Mar. 29, 2013) (recommending dismissal of Title III claim where the plaintiffs did not allege that defendant "failed…to simply read the contents of the documents to her");

*Camarillo*, 518 F.3d at 157 ("While restaurants are not necessarily required to have on hand large print menus that [plaintiff] would be able to read, they are required to ensure that their menu options are effectively communicated to individuals who…are legally blind."); 28 C.F.R. Part 36, App. B, *Subpart B-General Requirements* ("Full and equal enjoyment means the right to participate and to have an equal opportunity to obtain the same results as others to the extent possible with such accommodations as may be required by the Act and these regulations. It does not mean that an individual with a disability must achieve an identical result or level of achievement as persons without a disability."); "Effective Communication," DOJ Civil Rights Division, available at http://www.ada.gov/ effective-comm.htm (Jan. 2014) ("Some easy solutions work in relatively simple and straightforward situations. For example…[i]n a lunchroom or restaurant, reading the menu to a person who is blind allows that person to decide what dish to order"). Notably, in these examples of auxiliary aids and services, the visually impaired individual is *not* ordering food or reviewing a price tag *independently*, as the public accommodation is providing human assistance to the person.[3]

Finally, the Title III regulations make clear that context matters when evaluating the auxiliary aids and services requirement. *See* 28 C.F.R. § 36.303(c)(1)(ii) ("The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of

---

[3]    *See also U.S. v. QuikTrip*, No. 8:10-cv-00262-WKU-CRZ, Dkt. 5 (D. Neb. July 19, 2010) available at http://www.ada.gov/quiktrip_consent.htm ("Following are examples of the types of assistance that QuikTrip will provide:…reading product labels and prices and providing wayfinding assistance to customers who are blind or have low vision; and assistance in operating equipment, including food and beverage service equipment, vending machines, and point-of-sale payment devices."); *Voluntary Compliance Agreement between the United States of America and Blue Smoke, LLC*, U.S. Department of Justice, S.D.N.Y. (April 7, 2014), available at http://www.ada.gov/blue-smoke.htm (agreement by restaurant to provide auxiliary aids and services, including note takers and qualified readers, to assist blind persons in reading menu).

- 8 -

the communication involved; and the context in which the communication is taking place."). Plaintiff's demand that Pei Wei implement ATM technology in the Freestyle dispensers (*see* Am. Cmplt. at ¶¶ 43, 85) highlights the importance of privacy concerns in some scenarios, as well as the complete lack of any such concerns in the case of the Freestyle dispenser. Because of the obvious privacy concerns inherent in the use of ATMs by visually impaired individuals, ATMs are specifically regulated under Title III. *See* ADA Accessibility Guidelines at § 707 (2004). Similar privacy concerns are, of course, nowhere to be found in the context of the simple transaction of obtaining a beverage from a drink dispenser. Thus, while there are times when a certain level of independence is necessary to ensure effective communication as required by Title III, dispensing a beverage at a Pei Wei restaurant is unquestionably not such a scenario.

C.     Plaintiff's Claims Should Be Dismissed Pursuant to Rule 12(b)(1) Because Plaintiff Lacks Standing.

All of Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because he lacks standing to assert these claims. Plaintiff has the burden of showing Article III standing in the Amended Complaint, and must allege: (1) an injury in fact; (2) a causal connection between the challenged conduct and the injury; and (3) a likelihood that the injury will be redressed by the relief sought. *New v. Lucky Brands Dungarees Stores, Inc.*, 51 F. Supp. 3d 1284, 1285 (S.D. Fla. 2014) (Ungaro, J.) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *see also Gomez v. Dade Cnty. Fed. Credit Union*, No. 14-11539, 2015 U.S. App. LEXIS 7481, at *10 (11th Cir. May 6, 2015).[4] Additionally, to establish standing to pursue injunctive relief, he must plead a genuine threat of imminent future injury.

---

[4]     It appears that Plaintiff was also the plaintiff in this recent decision from the Eleventh Circuit regarding an allegedly non-compliant ATM.

*Gomez*, 2015 U.S. App. LEXIS 7481, at *10; *Lucky Brands*, 51 F. Supp. 3d at 1285 (citing *Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1239 (11th Cir. 2000); *Lujan*, 504 U.S. at 560). Here, when the allegations in the Amended Complaint are read together with the Lupella Declaration submitted by Pei Wei,[5] it is clear that he lacks standing to bring this lawsuit because (1) he has not suffered an injury in fact; and (2) he has not pled – and cannot establish – a genuine threat of imminent future injury.

       1.      <u>Plaintiff Lacks Standing Because He Has Not Suffered an Injury in Fact.</u>

To establish the required injury in fact to support standing, Plaintiff must point to an "invasion of a legally protected interest which is concrete and particularized and actual and imminent, not conjectural or hypothetical." *Gutherman v. 7-Eleven, Inc.*, 278 F. Supp. 2d 1374, 1378 (S.D. Fla. 2003) (Snow, M.J.) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)), *adopted* 278 F. Supp. 2d 1374 (S.D. Fla. 2003) (Middlebrooks, J.); *Miccosukee Tribe of Indians v. U.S.*, 574 F. Supp. 2d 1360, 1364 (S.D. Fla. 2008) (Ungaro, J.). Plaintiff has not – and cannot – meet his burden in this regard. Based on the allegations in the Amended Complaint, Plaintiff never actually: (1) notified any Pei Wei employee that he is visually impaired; (2) notified any Pei Wei employee that he was not able to use the Freestyle dispenser because of his visual impairment; (3) requested assistance with the Freestyle from an employee of the restaurant because of his visual impairment; or (4) was denied or refused any such assistance by any Pei Wei employee. Moreover, it appears that he was, in fact, able to use the Freestyle dispenser during his visit after his mother provided him assistance. (Am. Cmplt. at ¶ 37) Rather, he

---

[5]      In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(1) based on a factual challenge to the Court's subject matter jurisdiction, the Court may and should consider evidence outside of the pleadings. *Gomez*, 2015 U.S. App. LEXIS 7481, at *11; *Goodman v. Sipos*, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001); *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990); *Burrows v. Purchasing Power, LLC*, No. 1:12-cv-22800-UU, 2012 U.S. Dist. LEXIS 186556, at *4-5 (S.D. Fla. Oct. 18, 2012) (Ungaro, J.).

claims only that he visited the Pei Wei restaurant and purchased a beverage, and that he was not able to operate the Freestyle independently to dispense his own beverage.  (*Id.* at ¶¶ 34, 36)  In addition, the evidence submitted by Pei Wei demonstrates that the Pei Wei restaurant in question met its obligation under the ADA to provide auxiliary aids and services through its practices for assisting visually impaired customers.  (Lupella Decl. at ¶¶ 7-11).

This case is closely analogous to *Panzica v. Mas-Maz, Inc.*, No. 05-2595 (ARL), 2007 U.S. Dist. LEXIS 42171 (E.D.N.Y. June 11, 2007).  In that case, the plaintiff filed a Title III lawsuit claiming that she could not access a restaurant because it did not have a handicap-accessible entrance.  *Id.* at *8.  In fact, however, the restaurant had a second entrance that was handicap-accessible, but which the plaintiff simply failed to notice when she visited.  *Id.*  The court dismissed the case for lack of standing, explaining that "[a]t the point plaintiff filed her discrimination complaint it was based on her mistaken subjective belief that she was denied entry because there was no handicapped accessible entryway," and that "[a]s such, plaintiff's claimed injury was not factually correct making it impossible for the court to conclude that she suffered an injury-in-fact."  *Id.* at *8-9; *Gomez*, 2015 U.S. App. LEXIS 7481, at *12 (no injury in fact where plaintiff could not establish that defendant failed to comply with Title III); *Norkunas v. Seahorse NB, LLC*, 444 F. App'x 412, 415-16 (11th Cir. 2011) (trial court properly held plaintiff had no standing to bring claims regarding unavailability of accessible hotel rooms because plaintiff did not request such a room).

Here, the evidence submitted by Pei Wei demonstrates that there was no lack of auxiliary aids and services to assist visually impaired customers with the Freestyle dispensers at the restaurant Plaintiff allegedly visited in May 2015.  (Lupella Decl. at ¶¶ 7-11)  Like the plaintiff in *Panzica*, Plaintiff's claims here are based on what appears to be a mistaken

subjective belief on his part that no such assistance was available.  As a result, Plaintiff never suffered an injury in fact and he therefore lacks standing to bring this case.

        2.      <u>Plaintiff Lacks Standing to Assert Claims for Injunctive Relief Because He Cannot Establish a Genuine Threat of Imminent Future Injury.</u>

Plaintiff also lacks standing to seek injunctive relief because he cannot establish a genuine threat of imminent future injury for two reasons.  First, he is vague and equivocal regarding his intention to return to the Pei Wei restaurant in question.  He alleges, without any detail or specificity, that he continues to dine at restaurants similar to Pei Wei, and that he desires to return to Pei Wei's restaurants but is unable to do so because he cannot independently use the Freestyle dispensers.  (Am. Cmplt. at ¶ 51)  He does not, however, allege any particular time period during which he plans to visit Pei Wei restaurants, whether he intends to return to the same location that he allegedly visited in May 2015, or whether he lives in, works in, or otherwise frequents the area in close proximity to that Pei Wei restaurant or any other Pei Wei restaurant.  Such allegations cannot establish the threat of imminent injury required to create standing.  *See Lucky Brands*, 51 F. Supp. 3d at 1285-86 (dismissing Title III claim for lack of standing where plaintiff alleged only that he lived somewhere in Florida, once visited one of defendant's stores, and intended to purchase merchandise at defendant's stores in the future).

Second, should Plaintiff actually return to the Pei Wei restaurant in question, there can be no genuine threat of imminent future harm to him because of the proactive steps taken by Pei Wei to re-instruct its employees on ensuring guests are given proper assistance.  Specifically, the restaurant has recently re-communicated to all of its customer-facing employees the restaurant's practice of ensuring that any disabled guest who needs assistance is provided such assistance in a timely and professional manner, and specifically the need to ensure that any visually-impaired person is offered assistance in getting a drink from the Freestyle dispensers.

- 12 -

(Lupella Decl. at ¶ 12)  Pei Wei's efforts in this regard also render Plaintiff's claims for injunctive relief moot.  *See*, *e.g.*, *Bacon v. Walgreen Co.*, No. 14-CV-419, 2015 U.S. Dist. LEXIS 35184, at *7 (E.D.N.Y. Mar. 20, 2015) (dismissing Title III claim as moot where defendant remedied the barrier at issue); *see also Nat'l Alliance for Accessibility, Inc. v. Walgreen Co.*, No. 3:10-CV-780-J-32-TEM, 2011 U.S. Dist. LEXIS 136171, at *7-10 (M.D. Fla. Nov. 28, 2011) (dismissing Title III claim as moot and collecting similar cases); *Brother v. CPL Invs., Inc.*, 317 F. Supp. 2d 1358, 1372 (S.D. Fla. 2004) (Martinez, J.) (Title III claims rendered moot by actions taken by defendant in response to plaintiffs' concerns, such that "the allegedly wrongful behavior could not reasonably be expected to recur").

In sum, when Plaintiff's scant allegations regarding his future intentions are combined with this testimony from Pei Wei, it is abundantly clear that Plaintiff has not pled – and cannot establish – a genuine threat of imminent future injury.

D.      Plaintiff's Claims Should Be Dismissed Pursuant to Rule 12(b)(6) Because He Has Failed to State a Claim Upon Which Relief May Be Granted.

1.      Plaintiff Has Failed to State a Claim Under the ADA.

To state a claim under Title III, Plaintiff must allege that: (1) he is disabled within the meaning of the ADA; (2) Pei Wei is a place of public accommodation; and (3) Pei Wei denied Plaintiff full and equal enjoyment of its goods or services because of his disability.  *Larsen v. Carnival Corp.*, 242 F. Supp. 2d 1333, 1342 (S.D. Fla. 2003) (Graham, J.).  For purposes of the instant motion, Pei Wei does not dispute that Plaintiff has adequately pled the first and second elements.  As explained below, however, he has not adequately pled the third element – nor can he – and as a result he has failed to state a claim.

As noted, Plaintiff's Title III claim must be analyzed under the auxiliary aids and services provision of the statute, and Plaintiff has conceded as much.  (Am. Cmplt. at ¶¶ 85-86)  Although

Case 1:15-cv-22657-UU   Document 18   Entered on FLSD Docket 08/20/2015   Page 14 of 21

he claims, in a conclusory manner that Pei Wei has violated the auxiliary aids and services requirement (*see id.*), Plaintiff does not actually allege sufficient facts to set forth a plausible claim that Pei Wei failed to provide auxiliary aids or services in violation of the ADA. *See Alcalde v. Blue Cross & Blue Shield of Fla., Inc.*, 62 F. Supp. 3d 1360, 1363 (S.D. Fla. 2014) (Ungaro, J.) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief…. Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw on its judicial experience and common sense.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)); *Dowbenko v. Google Inc.*, 991 F. Supp. 2d 1219, 1220 (S.D. Fla. 2013) (Ungaro, J.) (granting motion to dismiss because plaintiff's allegation was implausible).  Plaintiff has failed to state a claim under the ADA because (1) he does not allege that he was unable effectively to use the Freestyle dispenser because of an absence of auxiliary aids or services; and (2) he does not allege that he actually requested that Pei Wei provide him with any auxiliary aids or services in connection with his visual impairment, or that he otherwise put Pei Wei on notice of his need for auxiliary aids or services because of his disability.

a.    Plaintiff Does Not Claim that He Was Unable to Use the Freestyle Dispenser Because of an Absence of Auxiliary Aids or Services.

First, Plaintiff's Title III claim fails because he never actually alleges that he was unable effectively to enjoy the benefits of the Freestyle dispenser due to an absence of auxiliary aids and services.[6]  Rather, he has merely alleged that he was not able to use the Freestyle *independently*

---

[6]    Even if, notwithstanding the multiple and critical gaps in Plaintiff's allegations about his visit to the Pei Wei restaurant, the Court construes the Complaint to properly allege that Plaintiff actually requested and was denied auxiliary aids and services in connection with his visual impairment during his visit to Pei Wei in May 2015, such allegations of a single, isolated failure to provide auxiliary aids and services still cannot sufficiently state a claim under Title III.  *See*

- 14 -

(*see* Am Cmplt. at ¶¶ 5, 24, 32 n.2, 36, 39, 41, 46, 53, 85), and that Pei Wei has not provided him the auxiliary aid or service *of his choice*.   (*See id.* at ¶¶ 43, 85)  Neither allegation, however, is sufficient to state a Title III claim for failure to provide auxiliary aids and services.

As noted, Title III does not require public accommodations to ensure customer independence through the provision of auxiliary aids and services, but only to ensure effective communication.  It appears from the Amended Complaint that Plaintiff is attempting to justify his focus on independence by trying to distinguish the Freestyle dispenser from the analogous situations discussed above – menus and traditional beverage dispensers – by emphasizing the "experience" that the Freestyle gives customers to customize drinks from a long list of options. (*See*, *e.g.*, Am. Cmplt. at ¶¶ 24, 38-39, 41-42, 50)  For purposes of what is needed to ensure effective communication, however, there is no basis for distinguishing the Freestyle dispenser from menus in a restaurant or traditional beverage dispensers that are available for customer use. While the Freestyle dispenser has additional features that traditional beverage dispensers do not (*see*, *e.g.*, *id.* at ¶ 34 n.3, 39), assisting a visually impaired customer to obtain a beverage from a Freestyle dispenser is not materially different from assisting such a customer with many restaurant menus or wine lists, which would require reading and interactive dialogue between the visually impaired customer and the assisting employee to arrive at the customer's order. Additionally, for purposes of providing auxiliary aids or services to ensure effective communication, the Freestyle dispenser is no different than a row of traditional beverage

---

*Gomez*, 2105 U.S. App. LEXIS 7481, at *2 ("[T]he law does not permit injunctive relief against businesses whose noncompliance was unintentional, temporary, and isolated"); *Stephens v. Shuttle Assocs., L.L.C.*, 547 F. Supp. 2d 269, 278 (S.D.N.Y. 2008) (dismissing Title III claim that was based on allegation of one isolated incident); *compare Camarillo*, 518 F.3d at 157 (finding plaintiff had stated Title III claim where she alleged "more than mere rudeness or insensitivity, and more than one or two isolated mistakes," but rather failures to provide auxiliary aids or services on "numerous occasions").

dispensers – particularly where there is a large number of such dispensers – in that both provide the customer with many beverage options, as well as the ability to mix brands.[7]   Thus, despite Plaintiff's suggestion to the contrary, there is nothing about the Freestyle dispenser that would render the more traditional auxiliary aids and services discussed above unable to provide effective communication to visually impaired customers wanting to use the Freestyle dispenser.

Moreover, Plaintiff cannot state a Title III claim by asserting only a failure to provide the particular auxiliary aid or service of his choice.   Indeed, the law is clear that "the ultimate decision as to what measures to take rests with the public accommodation, provided that method chosen results in effective communication."   28 C.F.R. § 36.303(c)(1)(ii); *see also Martin*, 2015 U.S. App. LEXIS 13383 (11th Cir. July 31, 2015) (affirming dismissal under Title II of ADA where hospital ensured effective communication with deaf patients even though it did not provide the auxiliary aid demanded by plaintiffs); *Burkhart v. Wash. Metro. Area Transit Auth*., 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Nothing in the ADA itself or its implementing regulations dictates that a disabled individual must be provided with the type of auxiliary aid or service he requests…."); *Wells v. Thaler*, 460 F. App'x 303, 313 (5th Cir. 2012) ("Although the [defendants] did not provide [plaintiff] his requested accommodations, the [defendants]

---

[7]      Plaintiff attempts to distinguish traditional beverage dispensers from Freestyle dispensers by claiming that he can "obtain full and equal access" to traditional dispensers (which he acknowledges are ADA-compliant) by memorizing the order of the available drink options. (Am. Cmplt. at ¶ 17)  This argument is completely unavailing, however, because he ignores the fact that he necessarily still requires assistance from someone else to learn the order of the drink options in the first instance, as well as the fact that the available options or the order of the options at a traditional dispenser could be changed at any time.  Indeed, he himself proves the weakness of his argument by claiming that when using the Freestyle dispenser, he cannot gauge how much beverage is in his cup, because the same concern would apply with a traditional beverage dispenser.  (Am. Cmplt. at ¶ 45)  This failed effort to distinguish Freestyle dispensers from traditional dispensers only serves to highlight the fact that the appropriate auxiliary aids and services needed to assist visually impaired individuals with either type of dispenser are common sense customer service and assistance, rather than the complicated and expensive technology-driven solutions that Plaintiff is demanding.

demonstrate that the existing accommodations were more than sufficient to give [plaintiff] effective and meaningful access…."); *McElwee v. Cnty. of Orange*, 700 F.3d 635, 641 (2d Cir. 2012) (under Title II of the ADA: "Although a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice"); *Petersen v. Hastings Pub. Schs.*, 31 F.3d 705, 708-09 (8th Cir. 1994) (stating auxiliary aids need not be those chosen by individual so long as they are effective); *Llanes v. Sears, Roebuck and Co.*, 46 F. Supp. 2d 1300, 1309 (S.D. Fla. 1997) (Ungaro, J.) (under Title I of the ADA, "[a]n employee cannot make his employer provide a specific accommodation if another reasonable accommodation is offered").

Here, the allegations in the Complaint cannot be construed as anything other than a claim that Pei Wei allegedly failed to provide a very specific auxiliary aid – implementation of the ATM technology which would allow blind individuals to use the Freestyle machines independently.  (Am. Cmplt. at ¶¶ 43, 85)  As the authorities discussed above make clear, however, such a claim – that Pei Wei did not give him the auxiliary aid or service of his choice – cannot form the basis of a Title III claim.  This is thus another reason why Plaintiff has not actually alleged that Pei Wei failed to "furnish appropriate auxiliary aids and services [so as] to ensure effective communication" with him in connection with the Freestyle dispenser, and as a result, another reason why he has failed to state a claim under Title III.  28 C.F.R. § 36.303(c)(1).

b.    Plaintiff Never Put Pei Wei on Notice of His Need for Any Auxiliary Aids or Services in Connection with His Visual Impairment.

Even if the Court were to ignore this glaring and fatal flaw with Plaintiff's Title III claim, his claim still fails because, based on the allegations in the Complaint, he never put Pei Wei on notice of his need for assistance with the Freestyle as a result of his visual impairment.  The auxiliary aid and service requirement of Title III is intended to ensure appropriate access for

individuals with communication-related disabilities, and such disabilities are not always apparent, nor are the specific needs of any particular individual with such an impairment. 28 C.F.R. Part 36, Appendix C, analysis for § 36.303. Therefore, before bringing a claim under Title III, a plaintiff must actually notify a public accommodation of his or her need for an auxiliary aid or service and be denied such request. *See Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059 (5th Cir. 1997) (Title III plaintiff "has the burden of proving that a modification was requested and that the requested modification is reasonable"); *Shaywitz v. Am. Bd. of Psychiatry and Neurology*, 848 F. Supp. 2d 460, 466-67 (S.D.N.Y. 2012) (granting summary judgment on Title III claim where plaintiff did not provide notice of or request accommodation for his dyslexia and anxiety disorder, holding "[a]lthough courts…do not always explicitly list notice of the alleged disability as an element of a Title III failure to accommodate claim, it is an assumed prerequisite…. Reason dictates that in order for a defendant to be liable for discrimination, 'on the basis of disability,' the defendant must have had adequate knowledge of the plaintiff's disability") (citations omitted); *Larsen*, 242 F. Supp. 2d at 1342 ("A plaintiff who alleges [a failure] to reasonably modify its policies…must show that he or she *actually requested a modification* that was necessary for full and equal enjoyment and that such a modification is reasonable….") (emphasis added); *see also* 28 C.F.R. Part 36, Appendix C, analysis for § 36.303 ("[A] clothing boutique would not be required to have Brailled price tags if sales personnel provide price information orally *upon request*.") (emphasis added).

Here, nowhere in the Amended Complaint does Plaintiff allege that he ever notified any Pei Wei employee that he is visually impaired, or that he needed assistance with the Freestyle because of his visual impairment. The lack of such allegations is fatal to his ability to state a claim under Title III for failure to provide auxiliary aids or services.

2.     Plaintiff Has Failed to State a Claim Under the Florida Civil Rights Act.

Plaintiff also attempts to assert claims under two provisions of the FCRA – the general prohibition on discrimination by places of public accommodation contained in Fla. Stat. § 760.08, and the specific provision regarding discrimination in public food establishments contained in Fla. Stat. § 509.092.  These claims fail for two reasons.  First, because these statutes are interpreted to be consistent with federal law, Plaintiff's failure to state a claim under Title III of the ADA is also fatal to his Florida law claims.  *See Velez v. Levy World L.P.*, 182 F. App'x 929, 932 (11th Cir. 2006) (affirming dismissal of claims under FCRA because plaintiff failed to establish Title III claim); *Stevens v. Steak n Shake, Inc.*, 35 F. Supp. 2d 882, 886 (M.D. Fla. 1998) (finding that Fla. Stat. § 509.092 should be interpreted consistent with federal public accommodation law); *Marchman v. St. Anthony's Hosp., Inc.*, 152 So.3d 830, 832 (Fla. 2d DCA 2014) ("[I]f a state law is patterned after a federal law on the same subject, the Florida law will be accorded the same construction as in federal courts to the extent the construction is harmonious with the spirit of the Florida legislation.").

Second, Plaintiff has failed to exhaust administrative remedies.  "Prior to bringing a civil action, a plaintiff alleging a violation of the [public accommodation provision of the] FCRA must file a complaint with the Florida Commission on Human Relations and follow the administrative pre-suit requirements."  *Wittbold v. Miami-Dade Cnty.*, No. 11-21922-Civ-COOKE/TURNOFF, 2012 U.S. Dist. LEXIS 124122, at *14 (S.D. Fla. Aug. 31, 2012) (citing Fla. Stat. § 760.11); *see also* Adeniji v. Fla. State College, No. 3:11-cv-443-J-34-TEM, 2012 U.S. Dist. LEXIS 67438, at *9-10 (M.D. Fla. Jan. 31, 2012).  Nowhere in the Amended Complaint does Plaintiff allege that he has filed a charge of discrimination with the Florida

Commission on Human Relations regarding the claim he is attempting to assert in this lawsuit, and for this reason, too, his FCRA claims should be dismissed.

### III.    CONCLUSION

For the reasons set forth above, Pei Wei respectfully requests that the Court dismiss all of Plaintiff's claims with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and/or Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

Charles H. Morgan
charlie.morgan@alston.com
Brett E. Coburn
brett.coburn@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
T: (404) 881-7000
F: (404) 881-7777

***Counsel for Defendant***

Michael R. Tein
mtein@lewistein.com
LEWIS TEIN, P.L.
3059 Grand Avenue, Suite 340
Coconut Grove, Florida 33133
Tel: (305) 442 1101
Fax: (305) 442 6744

***Local Counsel for Defendant***

By:    */s/ Michael R. Tein*
       MICHAEL R. TEIN
       Florida Bar No. 993522

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 20, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the following service list via transmission of Notices of Electronic Filing generated by CM/ECF.

_/s/ Michael R. Tein_
MICHAEL R. TEIN

### SERVICE LIST

Scott Richard Dinin
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, FL 33127
786-431-1333
Fax: 786-513-7700
Email: srd@dininlaw.com